# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1492

_____

Reva Francis,                                    *
                                                 *
                Appellant,                       *
                                                 *    Appeal from the United States
        v.                                       *    District Court for the
                                                 *    Western District of Missouri.
Jennifer Miller; Chris Koster,[1]                *
Attorney General,                                *
                                                 *
                Appellees.                       *

_____

Submitted:  December 9, 2008
    Filed:  March 6, 2009

_____

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Reva Francis was convicted in a Missouri state court of second degree murder
and armed criminal action in the shooting death of her husband, Tony Francis.  The
Missouri Court of Appeals affirmed her conviction but remanded the case to the trial
court for a ruling on Ms. Francis's motion for a reduction of sentence based on her
claim that she suffered from what is called battered spouse syndrome.  *See State v.
Francis*, 60 S.W.3d 662 (Mo. Ct. App. 2001) (*Francis I*).  When the trial court on

_____

[1]Pursuant to Fed. R. App. P. 43(c)(2), Chris Koster is automatically substituted
for his predecessor, Jeremiah W. Nixon.

remand imposed the same sentence, Ms. Francis moved for post-conviction relief, claiming ineffective assistance of counsel, *see* Mo. S. Ct. R. 29.15. The state trial court denied the motion and that decision was upheld on appeal, *see Francis v. State*, 183 S.W.3d 288 (Mo. Ct. App. 2005) (*Francis II*). Ms. Francis then applied for a writ of habeas corpus in federal district court.[2] *See* 28 U.S.C. § 2254. The district court denied the application but granted Ms. Francis a certificate of appealability on her ineffective-assistance claims, which she raises in this appeal. We affirm.

## I.

On the afternoon of the day that the shooting occurred, Ms. Francis's eighteen-year-old daughter, Roxanne Cummings, and Roxanne's boyfriend, Shane Ross, were in Ms. Cummings's bedroom when they heard "something hit the wall" and then a sound like a firecracker "pop." After the first "pop," Ms. Cummings heard her stepfather, Mr. Francis, yell and she heard another "pop" a short time later. When Ms. Cummings and Mr. Ross went to the kitchen, they saw Mr. Francis slumped over a chair. Because Ms. Francis and her daughter were "freaking out," Mr. Ross went outside and called 911. *Francis I*, 60 S.W.3d at 665 (internal quotation marks omitted).

When Officer Tony Yates arrived at the house where these events happened, he saw Ms. Francis standing in the kitchen. "She appeared distraught, was shaking, and was standing about two and half to three feet from the body of Tony Francis, which was slumped over a chair. There was a small pool of blood around the victim's head," but none appeared to be on Ms. Francis. Ms. Francis told the officer that "it was an accident [that] she accidentally shot her husband" with the "32-caliber semi-automatic handgun lying next to her purse." *Id.*

---

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

There was a hole in Ms. Francis's purse and testing showed that the gun had been fired while the muzzle was in contact with the side of the purse. Ms. Francis told Officer Yates that the gun was in her purse when it went off "through a struggle." After Officer Dan Loney arrived at the scene, Ms. Francis waived her *Miranda* rights and told him that she and her husband had been arguing, "that there was a struggle over her purse and there was a gun inside of her purse and that the gun went off." She said that they were sitting at the kitchen table when the first shot was fired, that Mr. Francis "attempted to get her purse from her and that the weapon was in the purse and it went off accidentally." Officer Loney twice asked Ms. Francis whether she had intentionally shot her husband and "[b]oth times she stated she did not." *Id.* at 665-66.

Evidence introduced at trial showed that the handgun had a heavy "trigger pull" of fifteen pounds and had to be "cycled" after inserting the magazine for a round to be fired, and a state witness testified that a "loosely held automatic pistol is unlikely to fire a second time and is likely to jam." The state also offered evidence that the weapon "had two safety mechanisms: a magazine safety, which prevented the trigger from being pulled if the magazine was removed[,] and a button on the left side of the handgun that had to be turned to the 'off' position before the gun would fire." *Id.* at 666-67.

Ms. Francis was taken into custody and interrogated that evening for approximately six hours. After waiving her rights a second time, she made a written statement:

> I came home around four p.m. Sunday night. We're s[i]tting ... at the dining room table going over bills and [our] checkbook.... He called the secretary to go over bills and I explained to him that I didn't like the gun in the house and I was taking it to Anita's or Lanna's house. He got mad and tried to get the gun out of my purse and my hand was in there, too. Then, the gun went off. I stand up with the gun in my left hand and with the purse in my right hand. Tony fell over the table and onto the

chair. The gun went off one more time in my hand. I dropped the gun and my purse and fell to the ground. I yelled at Shane to call the police.

*Id.* at 666 (alteration in original).

At trial, an officer described Ms. Francis's response when the police asked her to show how the second shot had been fired: She said that "Tony fell over the chair. She had the gun in this hand, her hand on the right of the purse. She said, leave me the f[_____] alone, pointed the gun down and then did this motion [demonstrating] with her hand, indicating the gun went off another time." The officer added that when Ms. Francis demonstrated how the gun discharged the second time, it appeared that "when [she] extended her arm out, she made a grasping motion with her hand, as if to fire the gun again." *Id.*

"The autopsy revealed that Mr. Francis suffered gunshot wounds to the back of the head, left shoulder and chest, caused by two bullets." A bullet entered his chest and moved slightly downward from left to right, front to back, penetrating his left lung, heart, and then the right lung before lodging under the skin. "A separate bullet entered the back of the head, exited, and ended up in Mr. Francis' right shoulder. The cause of death was listed as 'multiple gunshot wounds.' " *Id.*

On appeal, Ms. Francis contends that she received ineffective assistance of counsel at her trial. She had three trial attorneys: She first hired Randell Wood, who acted as her chief trial attorney; Brian Gepford and Willard Bunch, who had significantly more criminal trial experience than Mr. Wood, were hired before trial to assist in the defense.

## II.

Ms. Francis claims that trial counsel was ineffective in failing to investigate whether she suffered from battered spouse syndrome (BSS) by promptly obtaining an opinion from a psychiatrist, Dr. William Logan, and in failing to have Dr. Logan

testify that she suffered from BSS and post-traumatic stress disorder in support of a claim of self-defense.[3] BSS is "a type of post-traumatic stress disorder" that exhibits a "collection of symptoms including a highly fearful state, isolation, withdrawal, and a heightened sensitivity to situations that precede violence or an increase in violence" and occurs as a result of being subjected to physical abuse by one's spouse or domestic partner. *State v. Edwards*, 60 S.W.3d 602, 613 (Mo. Ct. App. 2001). The pertinent Missouri statute provides that "[e]vidence that the actor was suffering from the battered spouse syndrome shall be admissible upon the issue of whether the actor lawfully acted in self-defense." Mo. Rev. Stat. § 563.033.1 The state court ruled *in limine* that Ms. Francis could not simultaneously pursue defenses of accident and self-defense. (The trial court ruled that counsel could not argue that Ms. Francis performed the same act both accidentally and in self-defense, but the court did not forbid counsel from presenting what we later refer to as a hybrid defense, *i.e.*, that she fired one shot accidentally and the other in self-defense.)

## A.

Ms. Francis maintains that counsel should have investigated her mental state by retaining Dr. Logan for an opinion before deciding on trial strategy, a claim that the state contends we may not review because the state court rejected it on state procedural grounds. Federal courts may not grant a petition for habeas corpus if a state court has denied the asserted claim "pursuant to an independent and adequate state procedural rule ... unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

---

[3]Ms. Francis also contends that trial counsel should have used Dr. Logan's testimony for other purposes, such as showing diminished capacity, but we do not address those claims because she failed to raise them in state court and has provided no excuse for her procedural default. *See Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006).

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Lee v. Kemna*, 534 U.S. 362, 375-76 (2002).

The Missouri Court of Appeals refused to address the merits of Ms. Francis's failure-to-investigate claim because she did not include it in her post-conviction motion filed under Mo. S. Ct. R. 29.15. *Francis II*, 183 S.W.3d at 297-98. Ms. Francis's motion asserted that counsel was ineffective for failing to call Dr. Logan as a witness regarding his diagnosis of battered spouse syndrome but did not mention a failure to investigate. We do not believe, as Ms. Francis maintains, that the state court's opinion merely "not[ed] a possible procedural defect." The court specifically found that her motion did "not assert that trial counsel was ineffective for failing to *investigate*" a battered spouse defense, observed that "claims which were not presented to the motion court cannot be raised for the first time on appeal," and concluded that "Ms. Francis cannot now claim that her trial counsel was ineffective for failing to *investigate* whether Dr. Logan's testimony would have supported a battered spouse defense." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

Ms. Francis has asserted neither cause nor prejudice and does not maintain that a miscarriage of justice occurred. Because the state court relied on an independent state procedural rule, the only remaining question is whether the state's procedural bar was "adequate" to preclude our review. "Ordinarily, violation of firmly established and regularly followed state rules ... will be adequate to foreclose review of a federal [habeas] claim," *Lee*, 534 U.S. at 376 (internal quotation marks and citation omitted), and we will not "consider whether the state court properly applied its default rule to the claim; federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rules, except in unusual circumstances." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (emphasis and internal citation omitted), *cert. denied*, 546 U.S. 828 (2005).

-6-

Ms. Francis maintains that the rule relied upon by the Missouri Court of Appeals was not "firmly established and regularly followed." She relies, in part, on *Guinan v. State*, 726 S.W.2d 754, 756-57 (Mo. Ct. App. 1986), *cert. denied*, 484 U.S. 873 (1987), where the court addressed a post-conviction claim even though it was omitted from the motion. In that case, the court treated the motion as having been amended by consent because evidence regarding the claim had been admitted without objection at the motion hearing. Ms. Francis asserts that evidence regarding her failure-to-investigate claim was likewise admitted without objection during the motion hearing.

But the motion in *Guinan* was filed under Missouri's previous post-conviction rule, Mo. S. Ct. R. 27.26 (repealed 1988), which was repealed long before Ms. Francis filed her Rule 29.15 motion in December, 2000. Unlike the former rule, Rule 29.15 requires a movant to include in a post-conviction motion "every claim known to the movant," as well as a declaration stating that the movant has listed all known claims and understands that "the movant waives any claim for relief known to the movant that is not listed in the motion." Mo. S. Ct. R. 29.15(d). In her motion, as required, Ms. Francis specifically waived any unlisted claims known to her. (She does not say that she was then unaware of the claim in question, nor do we see any reason that she would have been.)

In *Rohwer v. State*, 791 S.W.2d 741, 743-44 (Mo. Ct. App. 1990), the Missouri Court of Appeals noted that the previous rule lacked the waiver provision and explained that Rule 29.15 was designed "to prevent delay, end the use of successive motions, and to discourage 'sandbagging' by the movant." *See also Day v. State*, 770 S.W.2d 692, 693 (Mo. 1989). Not surprisingly, given the language of the rule, Missouri courts have repeatedly rejected the argument that Ms. Francis relies on by holding that a Rule 29.15 motion cannot be amended to conform to evidence later presented at the motion hearing. *See State v. Jacobs*, 861 S.W.2d 621, 626 (Mo. Ct. App. 1993); *State v. Perry*, 820 S.W.2d 570, 575 (Mo. Ct. App.1991); *Rohwer*,

791 S.W.2d at 743-44; *see also Kelly v. State*, 784 S.W.2d 270, 273 (Mo. Ct. App. 1989).

We have previously described Rule 29.15 as providing "substantive, well-established procedures that [movants] are required to follow in order to have [their] claims considered post-trial." *Brown v. Luebbers*, 344 F.3d 770, 775 (8th Cir. 2003), *adopted in relevant part and vacated in part*, 371 F.3d 458, 460 (8th Cir. 2004) (en banc), *cert. denied*, 543 U.S. 1189 (2005). There is no avoiding a conclusion that the Missouri Court of Appeals relied on a "firmly established and regularly followed" state procedural rule to reject Ms. Francis's claim.

Ms. Francis argues, in the alternative, that even if the rule relied upon was firmly established and regularly followed, we should nonetheless review her claim because hers is an "exceptional" case where the state court "exorbitantly" applied its rules without furthering any identifiable state interest, *see Lee*, 534 U.S. at 376. Although generally a state court's reliance on firmly established and regularly followed rules is adequate to preclude federal review, the Supreme Court explained in *Lee* that "exceptional cases [exist] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of the federal question" in a habeas proceeding. *Id.* We do not believe, however, that Ms. Francis's case is an exceptional one.

In *Lee*, the Court reviewed a federal claim despite the habeas petitioner's failure to comply with a state rule that required continuance motions to be in writing. *Id.* at 366-67. The defendant had moved orally for a continuance when, on the last day of trial, his subpoenaed alibi witnesses from out of state, who "were sequestered in the courthouse" at the start of trial that day, disappeared suddenly and without explanation. *Id.* at 365-66. The state judge denied the motion, indicating that the requested continuance would interfere with other matters. *Id.* at 365-66, 369-70. The state appellate court raised the written-motion requirement for the first time on

appeal and refused to address the defendant's due process claim. *Id.* at 372-73, 380. The Supreme Court held that the rule upon which the state court relied, even if "firmly established and regularly followed," was inadequate to preclude federal review under the particular circumstances. The Court provided several reasons for its conclusion, but it relied heavily on the time constraints of trial and the unexpected nature of the circumstances presented. *Id.* at 381-86. Of course, no such conditions were present in Ms. Francis's case. She filed a Rule 29.15 motion *pro se* and later retained counsel who filed an amended motion; they simply failed to include the failure-to-investigate claim. Although a case may of course be exceptional without presenting the same circumstances as *Lee*, we discern nothing exorbitant in the state court's application of Rule 29.15 in this case.

In sum, the Missouri Court of Appeals relied on an independent and adequate state procedural bar in rejecting Ms. Francis's claim that counsel was ineffective by failing to retain Dr. Logan to investigate battered spouse syndrome as a defense. We are thus precluded from addressing that claim. *See Coleman*, 501 U.S. at 750.

B.

Ms. Francis contends that the state court should have determined that counsel was ineffective in failing to present Dr. Logan's testimony that Ms. Francis suffered from battered spouse syndrome in support of a claim of self-defense. In Missouri, expert testimony that a defendant suffered from BSS is admissible to "aid the jury in determining whether a defendant's fear and claim of self-defense are reasonable." *Edwards*, 60 S.W.3d at 613; *see* Mo. Rev. Stat. § 563.033. Such evidence may show that a defendant had a reasonable belief that deadly force was required to protect her from serious harm at the hands of the victim. *State v. Pisciotta*, 968 S.W.2d 185, 189 (Mo. Ct. App. 1998).

Ms. Francis argues first that counsel should have presented Dr. Logan's testimony in support of a so-called hybrid defense by contending that the gun first

discharged accidentally during a struggle, but relying on testimony regarding BSS to show that she fired the second shot in self-defense. But the Missouri Court of Appeals held that Ms. Francis could not pursue the hybrid-defense claim because, like the failure-to-investigate claim, it was omitted from her Rule 29.15 motion. *See Francis II*, 183 S.W.3d at 298. As we have already explained, the procedural rule that the state court relied on to reject this claim was firmly established and regularly followed. Nor has she presented an "exceptional case[] in which exorbitant application of a generally sound rule renders the state ground inadequate." *Lee*, 534 U.S. at 376. She had adequate time to present the claim and was not prevented from doing so; her Rule 29.15 motion makes no reference to such a defense and does not even mention that two shots were fired. We note, moreover, that she did not present evidence in support of the hybrid claim at the hearing on her Rule 29.15 motion. We therefore cannot address the claim.

The Missouri Court of Appeals addressed the merits of the motion court's holding that counsel's "failure to present Dr. Logan's testimony on battered spouse syndrome did not constitute ineffective assistance of counsel." *Francis II*, 183 S.W.3d at 298 (emphasis omitted). The court correctly recognized that to prevail Ms. Francis had to show that counsel's performance fell below an " 'objective standard of reasonableness' " and that prejudice resulted. *Id.* at 297-98 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Mr. Wood testified at the post-conviction hearing that the decision to present an accident defense was one of trial strategy, and the state court correctly noted that trial strategy decisions, if reasonable at the time, cannot support an ineffective-assistance claim "even if, in hindsight, better choices could have been made." *Francis II.*, 183 S.W.3d at 298; *see Bell v. Cone*, 535 U.S. 685, 698 (2002).

Because the state court applied the correct law, we may grant habeas relief only if the court applied that law "to the facts of [Ms. Francis's] case in an objectively unreasonable manner," *see Bell*, 535 U.S. at 699, or if its decision "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2).

The state appellate court reasoned that to succeed on an ineffective-assistance claim based on the failure to call a witness (here, Dr. Logan) Ms. Francis had to show, *inter alia*, that counsel's decision "involved something other than reasonable trial strategy" and that the witness's testimony "would have provided the defendant with a viable defense."  *Francis II* at 298 (internal quotation marks and citation omitted). The court concluded that trial counsel's decision to proceed with a defense of accident rather than presenting Dr. Logan's testimony regarding battered spouse syndrome to support a claim of self-defense was reasonable trial strategy.  *Id.* at 298-99.

Although we have already concluded that Ms. Francis did not preserve a free-standing failure-to-investigate claim, we cannot evaluate counsel's choice of a defense without addressing the adequacy of counsel's investigation beforehand.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland*, 466 U.S. at 690-91.  In other words, the strength of the general presumption that counsel engaged in sound trial strategy "turns on the adequacy of counsel's investigation." *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005) (relying on *Strickland*, 466 U.S. at 690-91).

Perhaps recognizing this principle, the state court, while rejecting Ms. Francis's failure-to-investigate claim on procedural grounds, nevertheless commented on the adequacy of counsel's investigation.  The court suggested the possibility that she did not include the claim in her motion because "the evidence demonstrates that Ms. Francis' trial counsel investigated the possibility of a battered spouse defense":

Mr. Wood testified that he investigated the possibility of a battered spouse defense, obtaining police and medical records and interviewing and endorsing witnesses. Mr. Wood believed he could obtain expert testimony supporting such a defense prior to trial and that the evidence was sufficient that he could obtain a jury instruction for a battered spouse defense. Mr. Wood ultimately decided not to pursue such a defense after comparing the relative merits of an accident defense and a battered spouse defense. Thus, Mr. Wood's decision to pursue a defense of accident was not made out of ignorance of the existence of a battered spouse defense, but was based on an assessment of which defense would produce the best result.

*Francis II*, 183 S.W.3d at 297-98.

The state court thus found that Mr. Wood, when deciding what defense to pursue, assumed that an opinion similar to the one eventually obtained from Dr. Logan would be available and could be presented at trial. Mr. Wood's testimony supports this finding, and we do not believe it is "an unreasonable determination of the facts in light of the evidence," 28 U.S.C. § 2254(d)(1). This case therefore differs from one in which a decision is made when counsel is completely unaware of vital information. And even if counsel's better course would have been to consult an expert before choosing a defense, we cannot say that the state court unreasonably applied Supreme Court precedent by concluding that counsel remained within the "wide range of professionally competent assistance" without doing so. *See Strickland*, 466 U.S. at 690.

Of course, the fact that the investigation was adequate does not necessarily mean that counsel's decision to pursue a defense of accident was not ineffective assistance. As the state appellate court noted, under Missouri law battered spouse syndrome "augments a claim of self-defense," rather than being in itself a defense to murder, and a claim of self-defense requires an intentional act. The court further observed that both before and shortly after Ms. Francis's arrest, she told the police that

-12-

both shots were accidental, and the defense of accident requires an unintentional act. *Francis II*, 183 S.W.3d at 299-300. Thus, according to the court, "because of the trial court's pre-trial ruling, had trial counsel pursued a battered spouse defense, Ms. Francis would have been forced to either repudiate her statements that the shooting was an accident and somehow explain her repeated statements to the contrary, or offer evidence that, while Ms. Francis believed the shooting was accidental, the shooting was actually intentional." *Id.* at 300. We believe that the state court did not unreasonably determine that "[e]ither tactic could have substantially undermined Ms. Francis' credibility, weakening her defense." *Id.*

The state court's analysis of this issue was extensive and tightly reasoned. We cannot conclude that the state court unreasonably applied *Strickland* by determining that counsel's decision to pursue an accident defense was reasonable because it was a "deliberate and informed choice to pursue one defense over another [as] a matter of trial strategy." *Francis II*, 183 S.W.3d at 301. For this reason, we reject Ms. Francis's contention.

### III.

Ms. Francis also maintains that counsel unreasonably failed to offer her testimony at trial after having told the jury that she would testify. Mr. Wood gave an opening statement in which he told the jury that Ms. Francis would testify. Mr. Wood further told jurors that Ms. Francis would say that her husband had abused her, that she intended to remove the gun from the house because of arguments that they were having, and that when Mr. Francis tried to take the gun out of her purse, she accidentally shot him.

At the post-conviction hearing, Mr. Wood explained that unexpected events during the trial convinced him that Ms. Francis should not testify after all. Counsel testified that pretrial depositions revealed that the state had many witnesses, some of whom were expected to testify that Ms. Francis had said that she wanted Mr. Francis

-13-

dead and "had threatened Tony or wanted to kill him." This testimony would of course tend to support a finding of deliberation, an element of the charged crime of first degree murder, *see* Mo. Rev. Stat. §§ 565.020.1, 565.002(3); *Francis II*, 183 S.W.3d at 304, and, according to Mr. Wood, if the state put on evidence of Ms. Francis "wanting to kill Tony," she "needed to testify." But the state rested its case after presenting only a fraction of the witnesses that it had listed and without offering any of this potentially damaging testimony. Mr. Wood testified that this turn of events surprised him and that he was at first unsure of how to proceed.

After court was adjourned for the day, counsel, Ms. Francis, and her family discussed the matter of whether she should testify. Mr. Wood advised her not to testify to prevent the state from presenting damaging rebuttal testimony about the statements that she had made before the shooting. Ms. Francis decided to take Mr. Wood's advice, and when she was questioned at length in open court the next day, she told the trial judge that she understood the circumstances and that the decision not to testify was hers. She specifically said that she knew that the jury might have a negative reaction to her not testifying after her lawyer had said that she would. Ms. Francis claims on appeal that counsel's promises to the jury, combined with counsel advising her not to testify, amounted to ineffective assistance of counsel.

Because the Missouri Court of Appeals denied this claim on the merits, our review is governed by the standards in 28 U.S.C. § 2254(d). Ms. Francis primarily maintains that the state court based its determination that counsel pursued a reasonable trial strategy "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). She also challenges the state court's application of the law to those facts, and we therefore consider whether the state court's decision was based on an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1)

-14-

The state court found that the state had witnesses who would testify that they had heard Ms. Francis say that she "wanted to kill her husband." *Francis II*, 183 S.W.3d at 304. Ms. Francis in her brief describes this finding as the state court's "most egregious error" because she "never once said she intended to kill her husband or perpetrate a physical act of violence on him." According to Ms. Francis, the witnesses would have testified instead that she had said that she wished Mr. Francis was dead, which she argues would have been significantly less harmful to her case. (Unfortunately, the depositions of the relevant witnesses are not part of the record.) Regardless of the degree of harm that such testimony would have caused, we believe that the state's finding was amply supported.

At the post-conviction hearing, as we have noted, Mr. Wood testified that he expected the state to offer "all this evidence that she had threatened Tony or wanted to kill him," and he later reiterated that counsel anticipated the state putting on evidence "about her wanting to kill Tony or whatever." We note, moreover, that Ms. Francis herself answered affirmatively when asked at the hearing whether she knew that if she testified, the state would have offered evidence that she "had in the past threatened to or wanted to or planned to kill" Mr. Francis. Given this evidence, we do not see how the state court's finding could have been an unreasonable determination of the facts.

We also reject Ms. Francis's contention that the state court "failed to recognize uncontradicted evidence that Mr. Wood was not surprised by the prospect of damaging rebuttal testimony." In fact, the evidence was not uncontradicted. As we have already said, Mr. Wood specifically testified at the post-conviction hearing that when the state rested, thereby leaving damaging witness testimony for rebuttal, he "was surprised" and he also said that all three of Ms. Francis's attorneys "likely fell out of our chair." Ms. Francis asserts that the state appellate court mistakenly believed that the motion court had found Mr. Wood's testimony credible. But the motion court, after quoting Mr. Wood's testimony that "together, all the lawyers and Reva" made the

-15-

"tough decision" that she would not testify, found that her three lawyers "willingly altered their initial trial strategy ... in light of the State's case-in-chief and the threat of a damaging rebuttal case," a finding consistent only with Mr. Wood's version of the events. Also without merit is Ms. Francis's contention that the evidence compelled a finding that Mr. Wood decided that Ms. Francis should not testify because he "lost his nerve," as one of her other attorneys believed: Nothing required the state court to disbelieve Mr. Wood's explanation of why he advised her not to testify. *See* 28 U.S.C. § 2254(d)(2).

We agree with Ms. Francis that prejudice may well result when counsel promises a jury that the defendant will testify and then she does not take the stand. But that does not mean that the state court unreasonably applied the law when it rejected Ms. Francis's ineffective-assistance claim. The state court carefully considered the unique circumstances of the case, found that counsel was presented with an unexpected and difficult decision regarding strategy, and held that counsel reasonably decided to advise Ms. Francis not to testify (though it would have probably also been reasonable to advise her to do so). She did not testify. The state did not present rebuttal witnesses regarding her intent, and the jury did not convict her of first degree murder. "Rather, the jury found Ms. Francis guilty of second degree murder and recommended a sentence of twenty-three years in prison. Ms. Francis' conviction of second degree murder, as opposed to first degree murder, may be largely attributable to the fact that the jury never heard evidence that Ms. Francis wanted to kill her husband prior to the day of the shooting." *Francis II*, 183 S.W.3d at 305.

We conclude therefore that the state court's rejection of Ms. Francis's claim was not "contrary to" and did not involve "an unreasonable application of clearly established Federal law, as determined by the Supreme Court," and was not based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

## IV.

We affirm the judgment of the district court.

_____